UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MICHAEL FRIEDMANN,

              Plaintiff,

   v.

FRANKLIN PIERCE PUBLIC SCHOOLS, et al.,

              Defendants.

CASE NO. 3:22-cv-06010-LK

ORDER REGARDING CROSS MOTIONS FOR SUMMARY JUDGMENT; DENYING MOTIONS TO STRIKE AND FOR SANCTIONS

This matter comes before the Court on the parties' cross motions and supplemental cross motions for summary judgment. Dkt. Nos. 32–33, 48–49. Plaintiff Michael Friedmann, who worked as a substitute teacher for Franklin Pierce Public Schools, contends that the school district and its employees discriminated against him, defamed him, and violated his constitutional rights. Dkt. No. 5 at 6–7. In addition to the parties' cross motions, Mr. Friedmann filed a motion to strike and a motion for sanctions. Dkt. Nos. 38, 40. For the reasons below, the Court dismisses certain claims, grants Defendants' motions for summary judgment on the remaining claims, and denies Mr. Friedmann's motions for summary judgment, to strike, and for sanctions.

# I.   BACKGROUND

Defendant Franklin Pierce Public Schools hired Mr. Friedmann as an emergency substitute teacher effective February 1, 2022. Dkt. No. 34 at 2. On March 11 and 14, 2022, Mr. Friedmann served as a substitute in teacher Jayne Marshall's third grade classroom at Collins Elementary School in the Franklin Pierce school district. Dkt. No. 35 at 2; Dkt. No. 36 at 2. Problems ensued.

## A.   The District Receives Complaints about Mr. Friedmann's Conduct

After Mr. Friedmann's teaching stint, Jayne[1] returned to her classroom to find the worksheets and lesson plans she left for Mr. Friedmann unused. Dkt. No. 36 at 2. Her classroom "was in a state of disarray" with "stacks of Kindergarten-level coloring pages left around the room, which were not grade-level appropriate for [her] third-grade class." Dkt. No. 36 at 2. Mr. Friedmann "did not leave any notes on what lessons he had taught, what work students completed or worked on, or how students had behaved." *Id.* Mr. Friedmann's only note to Jayne "was a handwritten comment on the whiteboard that said, 'Good class Ms. Marshall.'" *Id.*

In the following days, Jayne's students began telling her about Mr. Friedmann's classroom conduct. They relayed that Mr. Friedmann used the "F" word three times, said "shit" one time, told a student to "shut up," told students to "let the black girl do it," "teased two students about being boyfriend/girlfriend and asked if they were dating, and referred to two Black students as 'coco puffs.'" *Id.* Students also reported that Mr. Friedmann allowed them to spend time on YouTube, even though none of the lesson plans Jayne left involved using computers or the internet. *Id.* at 2–3. Jayne sought guidance from school Principal Barbara Mondloch, who instructed Jayne to complete a guest teacher feedback form to document the students' comments. *Id.* at 3. Jayne did so and returned the form to Principal Mondloch. *Id.*; Dkt. No. 36-1 at 1–2.

---

[1] Because Defendants Brandy Marshall and Jayne Marshall share a last name, the Court refers to them by their first names to avoid confusion. *See generally* Dkt. No. 33. No disrespect is intended by the use of their first names.

Meanwhile, Principal Mondloch received two emails from parents whose children had been in Mr. Friedmann's class. One parent raised concerns that their daughter stated that Mr. Friedmann "said shut up and the f word," and he told someone to "let the little black girl do it." Dkt. No. 37-1 at 3–4. The parent wrote, "As an educator myself I am appalled and I hope that you will not be allowing him back as a substitute." *Id.* at 4. A second parent wrote that their daughter stated that Mr. Friedmann "did not call her by her name but instead called her 'black girl.'" *Id.* at 2. The parent also relayed that Mr. Friedmann "took a phone call and said the f word as well as telling the whole class to shut up." *Id.* That parent reported the incident because they "[did] not want this guy around [their] kid." *Id.*

Principal Mondloch signed the guest teacher feedback form she received from Jayne, and indicated her recommendation that the district remove Mr. Friedmann from the substitute teacher list. Dkt. No. 35-1 at 1. Principal Mondloch then called Brenda Pearson, the district's Substitute Specialist in the human resources department, and relayed the complaints and the completed guest teacher feedback form. Dkt. No. 35 at 2. Principal Mondloch also told Ms. Pearson that another Collins employee reported that Mr. Friedmann had "white supremacist tattoos." Dkt. No. 33 at 4; Dkt. No. 35-2 at 1. Ms. Pearson took notes of her conversation with Principal Mondloch, and after the call ended, she forwarded her notes and the feedback form to Brandy Marshall, the district's Executive Director of Human Resources and Business Services. Dkt. No. 35-2 at 1; Dkt. No. 34 at 1–2; Dkt. No. 35 at 2. This process was typical: "[g]uest teacher feedback forms are routinely submitted to the District's Human Resources Department (HR) when a substitute teacher's performance is insufficient." Dkt. No. 34 at 2. HR then files the forms "in the relevant employee's personnel file"; those files are "located in the HR office and on electronic servers that only HR employees may access." *Id.* The district "is obligated to investigate complaints it receives under District Policy 5253," which is titled "Maintaining Professional Staff/Student Boundaries." *Id.*;

1   *see also* Dkt. No. 34-2. After Brandy reviewed the information, including the guest teacher

2   feedback form, she determined that Mr. Friedmann's "alleged conduct was serious enough that

3   [she] needed to pause his ability to register for substitute teacher assignments until [she] had heard

4   his perspective." Dkt. No. 34 at 2–3.

5   **B.   District Personnel Meet with Mr. Friedmann**

6         Mr. Friedmann met with Brandy and Ms. Pearson on March 21, 2022. Dkt. No. 35 at 2–3;

7   Dkt. No. 35-4 at 1 (Ms. Pearson's notes from the meeting). During the meeting, Brandy "walked

8   through each concern that had been included on the guest teacher feedback form." Dkt. No. 34 at

9   3; *see also* Dkt. No. 32 at 3.[2] Ms. Pearson reviewed the district's expectations regarding substitute

10  teachers, and Mr. Friedmann denied swearing or calling students names. Dkt. No. 35-4 at 1. He

11  also asserted that he followed all lesson plans except for reading a chapter book at lunch time. *Id.*

12        Brandy asked Mr. Friedmann if he had "any tattoos that could be interpreted as white

13  supremacist[.]" Dkt. No. 34 at 3. Mr. Friedmann responded "no" and "offered to roll up his sleeves

14  to show [her] his tattoos." *Id.* When he did so, Brandy said, "'I like a good tattoo' to make him

15  feel more at ease" because she has "many visible tattoos[.]" *Id.* Ms. Pearson and Brandy did not

16  observe any white supremacist tattoos on Mr. Friedmann. *Id.*; Dkt. No. 35-4 at 1.

17        At the end of the meeting, Brandy informed Mr. Friedmann that she was "unpausing his

18  ability to register for sub assignments in the District." Dkt. No. 34 at 3. Later that day, Mr.

19  Friedmann emailed her, thanking her for "seeing [him] today" and "for believing in [his] ability."

20  Dkt. No. 34-4 at 2–3. Mr. Friedmann also called Ms. Pearson and informed her that he would

21  prefer not to return to Collins. Dkt. No. 35 at 3; Dkt. No. 35-5 at 1.

22

23

24

---

[2] Mr. Friedmann captioned his motion for summary judgment as a "Motion for Summary Judgment; And Affidavit in Support of Motion for Summary Judgment." Dkt. No. 32 at 1. Although that filing is not signed under penalty of perjury as required by 28 U.S.C. § 1746(2), the Court considers the contents of the filing in light of his pro se status.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

**C.      The District Receives Additional Complaints about Mr. Friedmann**

In July 2022, Breanne Chapman, the Assistant Principal from a middle school in the district, met with Mr. Friedmann to discuss his conduct during a field trip. Dkt. No. 34 at 3; Dkt. No. 34-5 at 1. Specifically, students "reported they were talking to [Mr. Friedmann] about guns and that [he was] showing them pictures of guns [he] owned." Dkt. No. 34-5 at 1. Ms. Chapman reminded Mr. Friedmann "that any conversations about guns with students is inappropriate" and he should not engage in such conversations. *Id.* Ms. Chapman summarized the conversation in an email to Mr. Friedmann and copied Brandy. *Id.*; Dkt. No. 34 at 3. In August 2022, the Principal of the same middle school emailed Brandy with additional concerns about Mr. Friedmann's conduct. Dkt. No. 34 at 3; Dkt. No. 34-6. On September 2, 2022, Brandy notified Mr. Friedmann by letter that she was removing him from the district's active substitute list "due to the reports HR had received from several schools." Dkt. No. 34 at 4; *see also* Dkt. No. 34-7.

**D.      Mr. Friedmann Files Suit**

On December 28, 2022, Mr. Friedmann initiated this lawsuit against Jayne, Brandy, and Franklin Pierce Public Schools. Dkt. No. 1. He also named as defendants the State of Washington, the Office of Superintendent of Public Instruction, Superintendent Chris Reykdal, the United States of America, and the United States Department of Education, *id.* at 1, and the Court issued an order to show cause why the claims against those defendants should not be dismissed based on lack of subject matter jurisdiction and failure to state a claim, Dkt. No. 8 at 3. Mr. Friedmann then voluntarily dismissed his claims against those defendants. Dkt. Nos. 11, 12.

Remaining are Mr. Friedmann's claims that Jayne, Brandy, and the Franklin Pierce Public Schools violated his rights under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Americans with Disabilities Act of 1990 ("ADA"), the First and Fourth Amendments to the U.S. Constitution, and Washington libel, slander, and defamation laws. Dkt. No. 5 at 7. Specifically,

Mr. Friedmann alleges that Defendants discriminated against him based on his gender, race, and disability status. *Id.* at 6 (identifying as male, "100% Latino," and "100% disabled"). Mr. Friedmann also alleges that he was "discriminated against for having tattoos" and for "teaching in a cowboy hat," and he was "forced to strip in front of two women to show [his] tattoos[.]" *Id.* Mr. Friedmann further contends that Jayne's "complaint" was entirely untrue and "defamatory, slanderous, and libelous." *Id.* (alleging that a third party made "false allegations" about his tattoos "and then discussed them with Jayne Marshal, furthering [his] claims of defamation, libel and slander.").

Mr. Friedmann does not challenge his September 2022 removal from the substitute teacher list in this lawsuit. *See generally id.*; *see also* Dkt. No. 28 at 2 (Mr. Friedmann stating in the parties' joint status report that he "OBJECTS in every possible way to the Defendant[s]' introduction of comments, statements, or potential arguments that are rooted in time travel to 8-months after the willful and intentional defamation and discrimination which occurred by the actions of Jayne Marshall" because "such comments, statements or potential arguments are absolutely and entirely irrelevant to the basis of this claim"); Dkt. No. 49 at 7 (stating that "the Petitioner is NOT suing for wrongful termination").

The parties agreed to a briefing schedule and filed cross motions for summary judgment. Dkt. Nos. 30–33.

After receiving the cross motions for summary judgment, the Court issued a minute order noting that the motions did not address the constitutional claims and reminding the parties that the July 22, 2024 deadline for dispositive motions remained in effect. Dkt. No. 46. Defendants then filed a supplemental motion for summary judgment on July 22, 2024, Dkt. No. 48, and Mr. Friedmann filed a response and motion for summary judgment on July 24, 2024, Dkt. No. 49.

1

## II.   DISCUSSION

2        The Court has jurisdiction over Mr. Friedmann's claims under the Constitution, Title VII,

3   and ADA pursuant to 28 U.S.C. § 1331. The Court has supplemental jurisdiction over his state law

4   claims under 28 U.S.C. § 1367(a) because they are so related to Mr. Friedmann's federal claims

5   that they form part of the same case or controversy.

6   **A.    Mr. Friedmann's Motion to Strike**

7        Mr. Friedmann has filed a motion "pursuant to F.R.C.P. 12(f) to strike [Defendants']

8   crossclaims" as "insufficient . . . to state legal defenses[.]" Dkt. No. 38 at 1. Defendants have not

9   filed any crossclaims. *See, e.g.*, Dkt. No. 22 (Defendants' answer). With no crossclaim to strike,

10  Mr. Friedmann's motion is moot.

11       Even if Mr. Friedmann's motion is aimed at striking Defendants' affirmative defenses as

12  he states in the body of the motion, Dkt. No. 38 at 2, the motion to strike is untimely. Motions to

13  strike under Federal Rule of Civil Procedure 12(f) must be made "within 21 days after being served

14  with the pleading," Fed. R. Civ. P. 12(f)(2), making Mr. Friedmann's motion roughly six months

15  late.[3] The Court therefore denies Mr. Friedmann's motion to strike. However, because he is pro

16  se, the Court will consider the motion and attached declaration as a response to Defendants' cross

17  motion for summary judgment. Dkt. No. 38 at 1 (Mr. Friedmann contending that "[t]he crossclaim

18  brought by the Defendant[s] is an entirely false narrative with [n]o relevance to what brought this

19  lawsuit."). The Court reminds Mr. Friedmann that pro se litigants are subject to the same

20  procedural requirements as other litigants, *Muñoz v. United States*, 28 F.4th 973, 978 (9th Cir.

21

22  [3] The Court also notes that Mr. Friedmann has (again) violated this Court's Standing Order for All Civil Cases, which
instructs parties to "make a meaningful effort to confer prior to filing a dispositive motion," and requires any
23  dispositive motion to "contain a certification of conferral." Dkt. No. 10 at 6. Mr. Friedmann's Rule 12(f) motion to
strike includes no indication that he met and conferred before filing it. In addition, Mr. Friedmann's motion does not
24  contain a word count as required by Local Civil Rule 7(e)(6). The Court previously reminded Mr. Friedmann that any
dispositive motion must include a certification of conferral and word court. Dkt. Nos. 25–27.

1   2022), and further noncompliance with the Local Civil Rules or the Court's orders may result in

2   the Court striking improper filings and/or imposing sanctions.

3   **B.      Lack of Service on Defendant Jayne Marshall**

4          Defendants contend that if the Court "determine[s that] Defendants are not entitled to

5   summary judgment on Plaintiff's claims," the Court should "dismiss Defendant Jayne Marshall

6   for insufficient service of process." Dkt. No. 33 at 31. The Court previously granted Mr. Friedmann

7   an extension of time to serve Defendants and required him to file proof of service by October 2,

8   2023. Dkt. No. 18 at 2. Mr. Friedmann filed an affidavit of service on August 31, 2023, in which

9   he stated that he was "informed by ABC Legal Services that service has been processed against all

10  Defendants[.]" Dkt. No. 20 at 1. It appears that ABC Legal Services attempted to serve Jayne at

11  Brandy's residence, perhaps believing that they because they share a last name, they also share a

12  home. Dkt. No. 20-3 at 1. Jayne does not live at Brandy's address. Dkt. No. 36 at 3. Mr. Friedmann

13  argues that Jayne has evaded service and has received ample notice of the lawsuit. Dkt. No. 38 at

14  2.

15         Although Defendants argued this issue in the alternative, the Court addresses it first

16  because without proper service, the Court could lack personal jurisdiction over Jayne. *Benny v.*

17  *Pipes*, 799 F.2d 489, 492 (9th Cir. 1986) ("A federal court is without personal jurisdiction over a

18  defendant unless the defendant has been served in accordance with Fed. R. Civ. P. 4."); *see also*

19  *Pac. Atl. Trading Co. v. M/V Main Express*, 758 F.2d 1325, 1331 (9th Cir. 1985) ("[A] judgment

20  entered by a court without personal jurisdiction over the parties is void[.]"). Here, though, Jayne

21  has never disputed personal jurisdiction. She did not raise the issue in a motion to dismiss or in her

22  answer, which asserted defenses regarding service but not personal jurisdiction. Dkt. No. 22 at 7.

23  Any objection regarding lack of personal jurisdiction is thus waived. *Benny*, 799 F.2d at 492;

24  *Admiral Ins. Co. v. Kabul, Inc.*, No. 2:22-cv-00177-CDS-NJK, 2024 WL 580836, at *3 (D. Nev.

Feb. 12, 2024) (finding that defendant "failed to challenge personal jurisdiction in his answer and failed to file a pre-answer motion, so his arguments regarding that defense are waived"); Fed. R. Civ. P. 12(h)(1). In light of the waiver, the Court can and does exercise personal jurisdiction over Jayne. *Peterson v. Highland Music*, *Inc.*, 140 F.3d 1313, 1318 (9th Cir. 1998). And as set forth below, the Court finds that Defendants are entitled to summary judgment. The Court thus denies Jayne's alternate request to dismiss for lack of service.

## C.   Summary Judgment Standard

Summary judgment is appropriate only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court does not make credibility determinations or weigh the evidence at this stage. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). In essence, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

When parties file simultaneous cross-motions for summary judgment on the same claim, the Court "must consider the appropriate evidentiary material identified and submitted in support of both motions, and in opposition to both motions, before ruling on each of them." *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1134 (9th Cir. 2001); *see also Tulalip Tribes of Wash. v. Washington*, 783 F.3d 1151, 1156 (9th Cir. 2015) (the district court "rule[s] on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." (cleaned up)). The Court "giv[es] the nonmoving party in each instance the benefit of all reasonable inferences." *ACLU of Nev. v. City of Las Vegas*, 333 F.3d 1092, 1097 (9th Cir. 2003). However, to the extent the Court resolves factual issues in favor of the nonmoving party, this is true "only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the

movant, the motion must be denied." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

To establish that a fact cannot be genuinely disputed, the movant can either cite the record or show "that the materials cited do not establish the . . . presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). Once the movant has made such a showing, "the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (cleaned up). Metaphysical doubt is insufficient, *id.* at 586, as are conclusory, non-specific allegations, *Lujan*, 497 U.S. at 888–89. Nor is it the Court's job to "scour the record in search of a genuine issue of triable fact"; rather, the nonmoving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Kenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995)). The Court will enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

**D.     Title VII and ADA Claims**

 1. <u>Legal Standards</u>

A plaintiff can establish a prima facie case under Title VII by demonstrating that: "(1) he is a member of a protected class; (2) he was qualified for his position; (3) he experienced an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 847 (9th Cir. 2004); *see also Crowe v. Wormuth*, 74 F.4th 1011, 1035–36 (9th Cir. 2023).

The ADA prohibits "discriminat[ion] against a qualified individual on the basis of

disability in regard to . . . [the] discharge of employees . . . and privileges of employment." 42 U.S.C. § 12112(a). To establish a prima facie case of discrimination under the ADA, a plaintiff must show that he "(1) is disabled; (2) is 'qualified' and (3) suffered an adverse employment action because of his disability." *Hazelett v. Wal-Mart Stores, Inc.*, 829 F. App'x 197, 201 (9th Cir. 2020). Among other things, a plaintiff must establish that he is a person with a disability within the meaning of the statute. *Mayo v. PCC Structurals, Inc.*, 795 F.3d 941, 944 (9th Cir. 2015). An individual is disabled if he has a physical or mental impairment that substantially limits one or more of his major life activities; he has a record of such an impairment; or he is regarded as having such an impairment. *Coons v. Sec'y of U.S. Dep't of Treasury*, 383 F.3d 879, 884 (9th Cir. 2004) (citing 42 U.S.C. § 12102); *Shields v. Credit One Bank, N.A.*, 32 F.4th 1218, 1225 (9th Cir. 2022); 42 U.S.C. § 12102(1)(A). Following the ADA Amendments Act of 2008, "[t]he term 'substantially limits' shall be construed broadly" and "is not meant to be a demanding standard." 29 C.F.R. § 1630.2(j)(1)(i). Still, a plaintiff must establish the elements of the definition. *See, e.g.*, *Shields*, 32 F.4th at 1225–27.

Title V of the ADA prohibits retaliation against a person who has exercised certain rights under the ADA. 42 U.S.C. § 12203(a). A plaintiff bringing a retaliation claim under the ADA must show that: (1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) there was a causal link between the two. *See Brown v. City of Tucson*, 336 F.3d 1181, 1187 (9th Cir. 2003).

Once a plaintiff establishes a prima facie case of discrimination or retaliation under Title VII or the ADA, the burden of production shifts to the defendant "to articulate a legitimate, nondiscriminatory reason for its allegedly discriminatory conduct." *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 640 (9th Cir. 2003); *see also Opara v. Yellen*, 57 F.4th 709, 723 (9th Cir. 2023) (explaining that the burden on the employer "is one of production, not persuasion and

1   involves no credibility assessment" (cleaned up)); *Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d

2   1080, 1093 (9th Cir. 2001) (applying the burden-shifting framework to ADA discrimination cases).

3       If the defendant does so, the burden shifts back to the plaintiff to demonstrate that the

4   employer's "articulated reason is pretextual." *Opara*, 57 F.4th at 723. Plaintiffs can "show that the

5   articulated reason is pretextual 'either directly by persuading the court that a discriminatory reason

6   more likely motivated the employer or indirectly by showing that the employer's proffered

7   explanation is unworthy of credence.'" *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1124 (9th

8   Cir. 2000) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)). When a

9   plaintiff relies on circumstantial evidence to show pretext, he must "put forward specific and

10  substantial evidence challenging the credibility of the employer's motives." *Mayes v. WinCo

11  Holdings, Inc.*, 846 F.3d 1274, 1282 (9th Cir. 2017) (quoting *Vasquez*, 349 F.3d at 642). However,

12  the "specific and substantial standard is tempered by [the Ninth Circuit's] observation that a

13  plaintiff's burden to raise a triable issue of pretext is hardly an onerous one." *France v. Johnson*,

14  795 F.3d 1170, 1175 (9th Cir. 2015) (cleaned up).

15          2.  Mr. Friedmann Has Not Established a Prima Facie Case of Discrimination

16      Mr. Friedmann contends that he was discriminated against based on his disability status,

17  religion (Jewish),[4] national origin (he was "falsely accused of being a 'white supremacist'"), race

18  (he is "100% Latino" but "appears white"), and gender. Dkt. No. 32 at 1–4; *see also* Dkt. No. 38-

19  1 at 2 (alleging that he "was targeted by a district which engages in hate-filled rhetoric and

20  indoctrination with its students based on DEI and CRT policies, which targets heterosexual

21  individuals, especially males, and . . . alienates and removes traditional male role models from

22

23  ───────────────

24  [4] Mr. Friedmann notes that his tattoos include a "visible star of David," so Jayne and others knew his religion and "targeted" him for it. Dkt. No. 32 at 3. At the same time, he asserts that Jayne "pursued the false allegations . . . despite [n]ever having seen" him. *Id.*; Dkt. No. 49 at 3 (same).

1  classrooms"). Defendants counter that Mr. Friedmann has not established a prima facie case of

2  discrimination because he cannot demonstrate that he performed his job satisfactorily, suffered an

3  adverse action, or was treated differently than similarly situated employees outside his protected

4  class. Dkt. No. 33 at 10.

5      Even assuming that Mr. Friedmann was qualified for his position and suffered adverse

6  actions, he has provided no evidence of a connection between any adverse action and his protected

7  characteristics. His conclusory allegations of discrimination are insufficient to preclude summary

8  judgment. *See, e.g.*, *Forsberg v. Pac. Nw. Bell Tel. Co.*, 840 F.2d 1409, 1419 (9th Cir. 1988).

9      Mr. Friedmann's only non-conclusory assertion of discrimination appears in his

10 declaration in support of his motion to strike, in which he contends that "African-American, union

11 protected staff members" were present during the gun conversation in July 2022 and "directly

12 engaged in firearms-related conversations with those students" but "were never disciplined or

13 denied employment or faced any sort of scrutiny[.]" Dkt. No. 38-1 at 3–4. Even if Mr. Friedmann

14 were permitted to amend his complaint via a motion to strike (he is not), this assertion does not

15 suffice. To be proper comparators, employees must be "similarly situated in all material respects."

16 *Weil v. Citizens Telecom Servs. Co., LLC*, 922 F.3d 993, 1004 (9th Cir. 2019) (cleaned up).

17 "[I]ndividuals are similarly situated when they have similar jobs and display similar conduct."

18 *Vasquez*, 349 F.3d at 641. The plaintiff and comparators do not display similar conduct if they

19 were "not involved in the same type of offense[.]" *Id.*; *see also Mitchell v. Superior Ct. of Cal.*

20 *Cnty. of San Mateo*, 312 F. App'x 893, 894 n.1 (9th Cir. 2009). Likewise, the plaintiff and

21 comparators do not display similar conduct if they were not involved in the same combination of

22 offenses. *See Ingram v. Pac. Gas & Elec. Co.*, 690 F. App'x 527, 530 (9th Cir. 2017) ("Though

23 [plaintiff] can identify individuals with a relatively similar history of switching errors or with a

24 relatively similar history of driving violations, he is unable to identify an individual who shares

the combination of his switching errors and driving violations.").[5]

Here, Mr. Friedmann has not shown that he and the unnamed employees were similarly situated in all material respects. He has not identified their jobs, explained how their jobs were similar to his job, alleged that anyone reported their gun-related conversations, or contended that they engaged in inappropriate conduct similar to Mr. Friedmann's alleged conduct. And importantly, participating in a conversation with students about firearms is not the same as the misconduct Mr. Friedmann was alleged to have committed in March 2022, including using profanity around young students, referring to them in racially derogatory terms, and failing to follow lesson plans. Dkt. No. 36 at 2. The unnamed employees are thus not appropriate comparators. Nor has Mr. Friedmann identified any conduct or comments that give rise to an inference of discrimination. Mr. Friedmann has thus failed to state a prima facie case of discrimination.

### 3. The District Provided a Legitimate, Non-Discriminatory Reason

Even if Mr. Friedmann had established a prima facie case of discrimination, Defendants have demonstrated a legitimate, non-discriminatory reason for investigating the many complaints they received about him. Defendants aver—and Mr. Friedmann does not dispute—that they were required to investigate. Dkt. No. 34 at 2; Dkt. No. 34-2 at 3. Defendants also had a legitimate reason to remove Mr. Friedmann from the substitute list—temporarily and then permanently— based on the complaints and his apparent unwillingness or inability to change his behavior. Dkt. No. 34 at 2–4; Dkt. No. 34-7 at 1; *see also Wieland v. Bd. of Regents of Nev. Sys. of Higher Educ.*,

---

[5] Although the issue of "whether two employees are similarly situated is ordinarily a question of fact," *Hawn v. Exec. Jet Mgmt.*, 615 F.3d 1151, 1157 (9th Cir. 2010) (citation omitted), the issue can be resolved on summary judgment absent a disputed issue of material fact, *see, e.g.*, *Morris v. Mayorkas*, No. CV20-1174-MWF (RAOx), 2021 WL 3579361, at *5 (C.D. Cal. June 29, 2021) (finding at summary judgment that plaintiff failed to show that employees were proper comparators), *aff'd sub nom. Morris v. Wolf*, No. 21-55860, 2023 WL 7034508 (9th Cir. Oct. 26, 2023). *See also Beeman v. Mayorkas*, No. 21-235-MJP, 2022 WL 4120150, at *5–6 (W.D. Wash. Sept. 9, 2022) (granting summary judgment where plaintiff failed to produce evidence of similarly situated employees).

No. 23-15339, 2024 WL 810445, at *1 (9th Cir. Feb. 27, 2024) (finding that "deficient teaching performance" was a legitimate, non-discriminatory reason); *Aragon v. Republic Silver State Disposal, Inc.*, 292 F.3d 654, 661 (9th Cir. 2002) (stating that poor job performance is a legitimate, nondiscriminatory reason to take an adverse employment action).

4.   Mr. Friedmann Provided No Evidence of Pretext

Mr. Friedmann's subjective disagreement with the substance of the complaints against him is insufficient to demonstrate pretext. *Buhl v. Abbott Lab'ys.*, 817 F. App'x 408, 411 (9th Cir. 2020) (finding that plaintiff's "disagreements with his manager and his own subjective belief that [the employer's] concerns about his performance were overblown are insufficient to raise a genuine issue of fact"). Even if the numerous complaints district officials received about Mr. Friedmann were wrong, inaccuracy does not equate to discrimination. *See Dep't of Fair Emp. & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 746 (9th Cir. 2011) (it is insufficient to show that the employer's decision was "wrong, mistaken, or unwise" (citation and quotation marks omitted)); *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1063 (9th Cir. 2002).

Mr. Friedmann contends that one of the August 2022 complaints about him was made by "another African-American, union protected staff member . . . who exhibited hatred towards [him] for appearing white in skin tone and being a heterosexual male." Dkt. No. 38-1 at 4. That complaint is irrelevant because it was made months after the March 2022 actions he challenges here. Dkt. No. 5 at 6. And even if Mr. Friedmann is challenging his September 2022 removal from the substitute teacher list, he does not point to any evidence to show that the complainant was "in fact biased," and his allegation about that unnamed employee is "neither specific nor substantial and is thus insufficient to raise a genuine dispute" that bias motivated Defendants. *Wieland*, 2024 WL 810445, at *1. Nor does he contend that Brandy or the school official who relayed the August 2022 complaint to her was biased or aware of any alleged bias on the complainant's part. Dkt. No. 34 at

1   3; Dkt. No. 34-6 at 1. Mr. Friedmann has thus failed to show that Defendants' legitimate reasons

2   were pretextual.[6]

3       Accordingly, the Court grants Defendants' motion for summary judgment on Mr.

4   Friedmann's Title VII and ADA claims, and denies Mr. Friedmann's motion.

5       5.  Additional Deficiencies with Mr. Friedmann's ADA Claims

6       Mr. Friedmann's ADA Title I claim fails for an additional reason: he has not established

7   that he is a person with a disability. His conclusory statements that he is disabled, Dkt. No. 5 at 6;

8   Dkt. No. 32 at 2, 4, do not identify any impairment, much less an impairment that "substantially

9   limit[s]" a "major life activity." 42 U.S.C. § 12102(1)(A); *see also Vopnford v. Wellcare Health*

10  *Plans*, No. C16-1835-JLR, 2017 WL 3424964, at *11 (W.D. Wash. Aug. 8, 2017) (dismissing

11  ADA claim for failure to allege a disability).

12      As for his ADA retaliation claim, Mr. Friedmann has not alleged any facts showing that he

13  engaged in protected activity under the ADA or suffered retaliation as a result. *See Brown*, 336

14  F.3d at 1187. His conclusory allegations are insufficient to establish a prima facie case under the

15  ADA. *Wieland*, 2024 WL 810445, at *1 (conclusory declarations were insufficient to raise a

16  genuine issue of material fact). These deficiencies further underscore that Defendants are entitled

17  to summary judgment—and Mr. Friedmann is not—regarding his ADA claims.

18  **E.   Defamation Claims**

19      Mr. Friedmann contends that Jayne made a complaint that was "defamatory, slanderous,

20  and libelous" when she wrote that he "was 'a white supremacist with racist tattoos, that [he] did

---

21

22  [6] In addition, Mr. Friedmann's Title VII and ADA Title I claims fail against Brandy and Jayne because those statutes do not provide for individual liability. *See Miller v. Maxwell's Int'l Inc.*, 991 F.2d 583, 587–88 (9th Cir. 1993) (holding that individuals cannot be held liable for damages under Title VII); *Walsh v. Nev. Dep't of Human Res.*, 471 F.3d

23  1033, 1038 (9th Cir. 2006) (holding that there is no individual liability under Title I of the ADA). District courts in this circuit have also held that there is no individual liability under Title V of the ADA. *See, e.g.*, *Martinez v. Cnty. of Alameda*, No. 20-cv-06570-TSH, 2022 WL 3327924, at *6 (N.D. Cal. Aug. 11, 2022); *Ahmed v. Regents of Univ. of*

24  *California*, No. 17CV0709-MMA (NLS), 2018 WL 747796, at *7 (S.D. Cal. Feb. 7, 2018).

not follow lesson plans, [and] that [he] called her African-American students coco puffs.'" Dkt. No. 32 at 3; *see also* Dkt. No. 5 at 6; Dkt. No. 32 at 3 (alleging in his motion for summary judgment that "another adult in that school building . . . made the false allegations" about his tattoos "and then discussed them with Jayne Marshal[l] who then pursued the false allegations in both written and spoken form"). He contends that Jayne's complaint "was a weaponized narrative intended to end [his] career in teaching." Dkt. No. 32 at 3. He argues that Defendants engaged in libel under Section 9.58.010 of the Revised Code of Washington, and defamation under 28 U.S.C. § 4101. *Id.* at 4.

Defendants respond that the feedback form Jayne submitted is absolutely or conditionally privileged under Washington law and thus cannot serve as the basis for a defamation claim. Dkt. No. 33 at 16–23. They also contend that even if the statements were not privileged, Mr. Friedmann cannot identify any false statement Defendants made about him. *Id.* at 24–25. Nor can he demonstrate fault on their part or resulting damages. *Id.* at 25–27. Finally, they argue that the two statutes Mr. Friedmann cites are inapplicable. *Id.* at 27–29. Mr. Friedmann's reply does not specifically respond to any of those arguments, but instead reiterates that Jayne made "defamatory and discriminatory statements" against him. Dkt. No. 38 at 3; *see also* Dkt. No. 38-1 at 1–2.

1.  Defamation under Washington Law

Mr. Friedmann has alleged claims of "defamation, libel and slander." Dkt. No. 5 at 6. However, "Washington no longer distinguishes between libel and slander. Instead, Washington law recognizes a cause of action only for defamation." *Rhine v. United States*, No. 2:21-cv-00876-RAJ-BAT, 2021 WL 6617461, at *3 (W.D. Wash. Sept. 2, 2021), *report and recommendation adopted*, 2022 WL 179325 (W.D. Wash. Jan. 20, 2022). "To prevail on a defamation claim, a plaintiff must show (1) falsity; (2) an unprivileged communication; (3) fault; and (4) damages." *Sanchez v. Washington*, No. 3:21-cv-05915-RJB, 2022 WL 11229086, at *8 (W.D. Wash. Oct. 19,

2022) (citing *Mohr v. Grant*, 108 P.3d 768, 773 (Wash. 2005)). "To survive a defense motion for summary judgment, a defamation plaintiff must allege facts that would raise a genuine issue of fact for the jury as to each element." *Mohr*, 108 P.3d at 773.[7]

The first element of a defamation claim, falsity, requires "a false statement." *Mohr*, 108 P.3d at 773. Here, Mr. Friedmann has not identified any false statement by Brandy. *See generally* Dkt. No. 5. She is therefore entitled to summary judgment on Mr. Friedmann's defamation claim.

Turning to Jayne, although Mr. Friedmann alleges that she falsely stated in her feedback form that he was "a white supremacist with racist tattoos," Dkt. No. 5 at 6, the form does not contain any reference to tattoos or white supremacy, Dkt. No. 36-1 at 2. The record is unclear regarding whether another employee reported the tattoos to Jayne or to Principal Mondloch directly. *See* Dkt. No. 35 at 2; Dkt. No. 35-2 at 1.

Even assuming the employee reported the tattoos to Jayne and Jayne then conveyed the allegation to Principal Mondloch as Mr. Friedmann contends, Dkt. No. 5 at 6, he must demonstrate the existence of an "unprivileged communication." *Mohr*, 108 P.3d at 773. This he cannot do.

Under Washington law, "a conditional or qualified privilege may arise when the publication is for the protection of the interest of the publisher, the recipient or a third person, persons sharing a common interest, family relationships, or when the matter is of public interest." *Corbally v. Kennewick Sch. Dist.*, 973 P.2d 1074, 1077 (Wash. Ct. App. 1999). In other words,

---

[7] Although Mr. Friedmann seeks to hold all three Defendants liable for defamation, his complaint does not set forth a theory for holding the district liable. *See generally* Dkt. No. 5. Construing the complaint liberally, the Court assumes that he seeks to impose liability under a *respondeat superior* theory for the allegedly defamatory statements made by Jayne and the "[]other adult in the school" who reported that Mr. Friedmann had "white supremacist" tattoos. *Id.* at 6; *see also* Dkt. No. 35-2 at 1; *see, e.g.*, *Cantrell v. Forest City Pub. Co.*, 419 U.S. 245, 253 (1974) (holding that a newspaper could be liable "under traditional doctrines of respondeat superior" for alleged inaccuracies written by a reporter in the scope of his employment); *Stearns-Groseclose v. Chelan Cnty. Sheriff's Dep't*, No. CV-04-0312-RHW, 2006 WL 195788, at *10 (E.D. Wash. Jan. 13, 2006) (noting that if an individual "qualifies as an employee or agent of the City, then his actions may be imputed to it under the theory of *respondeat superior*" for a defamation claim). The district did not address that issue or dispute that it can be held liable on that basis. *See generally* Dkt. No. 33. The Court therefore assumes, as the parties do, that the district can be held vicariously liable for any allegedly defamatory statements by its employees within the scope of their employment.

1     "[t]he privilege applies when the declarant and the recipient have a common interest in the subject

2     matter of the communication." *Moe v. Wise*, 989 P.2d 1148, 1154 (Wash. Ct. App. 1999). "This

3     privilege generally applies to organizations, partnerships and associations and 'arises when parties

4     need to speak freely and openly about subjects of common organizational or pecuniary interest.'"

5     *Valdez-Zontek v. Eastmont Sch. Dist.*, 225 P.3d 339, 347 (Wash. Ct. App. 2010) (quoting *Moe*,

6     989 P.2d at 1155). Where the facts regarding the communications are not in dispute, the

7     determination of whether the communications were privileged is a question of law. *Corbally*, 973

8     P.2d at 1077.

9         As stated above, the Court assumes the truth of Mr. Friedmann's assertion that an employee

10     reported "white supremacist" tattoos to Jayne and Jayne then conveyed the allegation to Principal

11     Mondloch. Dkt. No. 5 at 6. Defendants argue that the employees' statements were privileged

12     because they had a duty to ensure that students "were educated in a discrimination-free

13     environment, . . . were provided curricular materials consistent with the District's adopted course

14     of study," and were protected from "acts of harassment, intimidation and bullying[.]" Dkt. No. 33

15     at 20 (first citing Wash. Admin. Code § 392-190-0591 (prohibiting discrimination in public

16     schools), then citing Wash. Rev. Code § 28A.405.060 (requiring teachers to "faithfully enforce in

17     the common schools the course of study and regulations prescribed, whether regulations of the

18     district, the superintendent of public instruction, or the state board of education"), and then citing

19     Dkt. No. 34-2 at 3–4 (district's policy requiring reporting of acts of harassment, intimidation, and

20     bullying)). Mr. Friedmann does not dispute any of those assertions. The Court agrees that the

21     common interest privilege applies here because the employees were reporting workplace concerns,

22     i.e., reports of Mr. Friedmann's troubling conduct and comments during his teaching assignment

23     and his potential violation of the district's policy. Dkt. No. 34 at 2; Dkt. No. 34-2. Jayne shared

24     the concerns with Principal Mondloch, Dkt. No. 36 at 3; Dkt. No. 35 at 2; Dkt. No. 35-2 at 1, who

1   in turn conveyed them to Ms. Pearson, the Substitute Specialist, Dkt. No. 35 at 1–2; Dkt. No. 35-

2   2 at 1. Ms. Pearson then forwarded her notes from the conversation and the feedback form to

3   Brandy (the Executive Director of HR), pursuant to her usual practice of forwarding complaints

4   of misconduct by substitute teachers. Dkt. No. 35 at 2. That small group of people shared an

5   interest in ensuring that substitute teachers complied with applicable teaching and conduct

6   standards to provide an "appropriate educational experience" for students. Dkt. No. 33 at 20–21;

7   *see also* Dkt. No. 34 at 2; Dkt. No. 34-2; Dkt. No. 35 at 2; Dkt. No. 36 at 2–3. Thus, the common

8   interest privilege applies. *See Hosseinzadeh v. Bellevue Park Homeowners Ass'n*, Nos. 21-35074,

9   21-35111, 2022 WL 522105, at *1 (9th Cir. Feb. 22, 2022) (holding that the common interest

10  privilege applied when an allegedly defamatory statement was made only to a small group who

11  shared a common interest in the subject matter); *Lawson v. Boeing Co.*, 792 P.2d 545, 549 (Wash.

12  Ct. App. 1990) (conditional privilege "unquestionably" covered employees' complaints of sexual

13  harassment, investigating employees, and employer because statements were "made in connection

14  with a matter of common interest to the company and the individuals").

15          Because Defendants have established that the privilege applies, "the burden shifts" to Mr.

16  Friedmann "to show abuse" of that privilege. *Corbally*, 973 P.2d at 1078. "A qualified privilege

17  may be abused, and its protection lost, if the publication is made with malice, which, in this context,

18  connotes ill will or absence of good faith." *Id.*; *see also Chamberlain Grp., Inc. v. Nassimi*, No.

19  C09-5438-BHS, 2010 WL 4286192, at *9 (W.D. Wash. Oct. 25, 2010) (explaining that "[t]o show

20  that [the defendant] abused its common interest privilege, [the plaintiff] must overcome the same

21  burden facing a public official plaintiff: he must prove that [the defendant] acted with actual

22  malice" (citation and quotation marks omitted)). "To prove actual malice a party must establish

23  that the speaker knew the statement was false, or acted with a high degree of awareness of its

24  probable falsity, or in fact entertained serious doubts as to the statement's truth." *Story v. Shelter*

1    *Bay Co.*, 760 P.2d 368, 373 (Wash. Ct. App. 1988); *see also Blackman v. Omak Sch. Dist.*, 466 F.

2    Supp. 3d 1172, 1196 (E.D. Wash. 2020) ("A defendant acts with malice when he knows the

3    statement is false or recklessly disregards its probable falsity." (quoting *Duc Tan v. Le*, 300 P.3d

4    356, 366 (Wash. 2013))). Regardless of whether a defamation plaintiff was acting as a private or

5    public figure, he must prove malice by clear and convincing evidence to defeat the privilege. *Moe*,

6    989 P.2d at 1157.

7         Here, Jayne wrote a report at the direction of Principal Mondloch to document what she

8    observed when she returned to her classroom and what her students told her. Dkt. No. 36 at 3. Her

9    report does not, as Mr. Friedmann alleges, state that Mr. Friedmann was a "white supremacist" or

10   anything similar. Dkt. No. 36-1 at 2. Another employee reported what he believed to be white

11   supremacist tattoos. Dkt. No. 35-2 at 1. Although Mr. Friedmann disputes the underlying truth of

12   these reports, he does not provide any facts to show that either employee *knew* his or her report

13   was false or had doubts about the report's veracity. Dkt. No. 5 at 6; *see also* Dkt. No. 32 at 3. In

14   the absence of any evidence of malice or abuse of the privilege, Defendants are entitled to summary

15   judgment on the defamation claim. *Corbally*, 973 P.2d at 1078 (affirming dismissal of a

16   defamation claim where a qualified privilege existed and plaintiff produced no evidence that

17   defendants acted "in bad faith or with ill will").[8]

18        Even if the privilege did not apply, Mr. Friedmann has failed to support the other elements

19   of his claim. With regard to the fault element, a plaintiff must establish that an individual acted

20   with negligence against a private individual, or with actual malice against a public figure. *Valdez-*

21   *Zontek*, 225 P.3d at 345. Regardless of which standard applies to the fault inquiry, Mr. Friedmann

22   has not supplied any evidence of malice or negligence. As set forth above, there is no evidence

23

24   _____

     [8] Because the Court finds that a conditional privilege applies, it does not address Defendants' argument that an absolute privilege applies.

that the employees believed their reports were false or shared their concerns more broadly than with those who needed to know to address the situation.

Finally, Mr. Friedmann has not provided any evidence that he suffered damages as a result of the allegedly defamatory statements. *See, e.g.*, *Blackman*, 466 F. Supp. 3d at 1196 (granting summary judgment on defamation claim when plaintiff presented no evidence of damages). Defendants are thus entitled to summary judgment on the defamation claim and Mr. Friedmann is not.

2.  Statutory Claims

Mr. Friedmann contends that Jayne "engaged in libelous activity" in violation of two statutes—Section 9.58.010 of the Revised Code of Washington and 28 U.S.C. § 4101(1)—when she "presented the written complaint [the teacher feedback form] against [him] which contained libelous and untrue statements." Dkt. No. 32 at 4. As Defendants note, the legislature repealed Section 9.58.010 after the Washington State Court of Appeals found that criminal statute to be unconstitutional.[9] That statute thus provides Mr. Friedmann no relief.

Mr. Friedmann's claim under 28 U.S.C. § 4101(1) fares no better. That section merely includes the definition of defamation and does not convey a private right of action. *See Sanders v. Hill*, No. 5:23-cv-1949, 2023 WL 8544229, at *2 (N.D. Ohio, Dec. 11, 2023). Instead, the section "is a part of a broader statutory scheme prohibiting a domestic court from enforcing a foreign judgment for defamation unless certain prerequisites are met." *Id.* (quoting *Brown v. Reny Co.*, No. 4:21-cv-395-KPJ, 2022 WL 2255134, at *6 (E.D. Tex. June 21, 2022)). Here, Mr. Friedmann does not allege the existence of a foreign judgment for defamation, so the statute is inapplicable.

---

[9]  Final Bill Report, SB 5147 (2009), https://lawfilesext.leg.wa.gov/biennium/2009-10/Pdf/Bill%20Reports/Senate/5147%20SBR%20FBR%202009.pdf (last visited September 30, 2024) (citing *Parmelee v. O'Neel*, 186 P.3d 1094 (Wash. Ct. App. 2008), *rev'd in part on other grounds*, 229 P.3d 723 (Wash. 2010)).

Accordingly, the Court dismisses Mr. Friedmann's statutory defamation claims with prejudice and denies Mr. Friedmann's motion for summary judgment on those claims.

**F.     Constitutional Claims**

Mr. Friedmann's complaint contends that Defendants violated "the 1st Amendment of the United States Constitution which specifically protects religion and freedom of speech (self-expression is protected as well[)]; the 4th Amendment of the United States Constitution which specifically protects 'the right of the people to be secure in their persons . . . against unreasonable searches . . . shall not be violated." Dkt. No. 5 at 7; *see also id.* at 6 (alleging that he was "discriminated against for teaching in a cowboy hat" and for "having tattoos" and "forced to strip" to display his tattoos). Although his complaint does not reference 42 U.S.C. § 1983, the Court assumes he is bringing his constitutional claims under that statute.

1.     First Amendment Claim

Defendants' supplemental motion for summary judgment argues that Mr. Friedmann has "failed to establish a prima facie case of First Amendment retaliation[.]" Dkt. No. 48 at 1–2. They argue that his comments in Jayne's classroom were not of public concern and he was speaking as a public employee, so his comments were not protected by the First Amendment. *Id.* at 8–10. They further contend that even if his speech were protected, "he has failed to articulate any adverse employment action he suffered as a result of his comments": school employees met with Mr. Friedmann, and then "he was permitted to return to work without penalty." *Id.* at 10–11. Finally, Defendants contend that Mr. Friedmann has not pleaded any facts to show that Defendants violated his First Amendment right to the free exercise of religion. *Id.* at 11.

In response, Mr. Friedmann cross moved for summary judgment,[10] arguing that Defendants

---

[10] Defendants argue that Mr. Friedmann's cross motion should be stricken because it was untimely. Dkt. No. 50 at 3.

1   "admitted to targeting [him] because of his tattoos, engaging in a conspiracy to paint [him] as a

2   'white supremacist', engaged in defamation, libel and slander against [him], and did so willfully

3   and with malice." Dkt. No. 49 at 9. He stresses that he is alleging discrimination rather than

4   retaliation. *Id.* at 2 ("[T]his case is not based upon a complaint of 'retaliation.' This case is based

5   upon the defamatory, libelous, and slanderous statement and comments made by the Defendant[s]

6   in both written and spoken form."); *id.* at 6 ("The Petitioner never alleged 'retaliation.' The

7   Petitioner alleged discrimination and defamation."). Defendants contend that Mr. Friedmann has

8   "failed to demonstrate *how* he was discriminated against, especially when he was allowed to return

9   to the classroom after meeting with the District's" HR personnel. *Id.* at 2.[11]

10          The Court agrees that Mr. Friedmann has failed to show how Defendants discriminated

11  against him based on his speech. To state a claim for viewpoint discrimination, plaintiffs must

12  make a threshold showing that they were engaged in a constitutionally protected activity. *Giebel*

13  *v. Sylvester*, 244 F.3d 1182, 1186 (9th Cir. 2001). Then, they must plausibly allege that: (1) on its

14  face, a government restriction on speech "distinguishes between types of speech or speakers based

15  on viewpoint expressed; or (2) though neutral on its face, the regulation is motivated by a desire

16  to suppress a particular viewpoint." *Moss v. U.S. Secret Serv.*, 711 F.3d 941, 959 (9th Cir. 2013).

17  Even if Mr. Friedmann's tattoos were constitutionally protected speech, he has not alleged that

18  Defendants restricted his speech, distinguished between different types of speech or speakers based

19  on viewpoint, or were motivated to suppress whatever message he was expressing with his tattoos.

20  He alleges that he was discriminated against "for having tattoos," not because of their content.

21  Dkt. No. 5 at 6. Accordingly, he has not stated a viewpoint discrimination claim.

22

23  Although the Court agrees that Mr. Friedmann filed his motion late and without excuse, the Court considers it because
    he is pro se and doing so does not change the outcome.

24  [11] Defendants contend that Mr. Friedmann has newly minted his theory that he was discriminated against for having
    tattoos, *id.* at 2, but his complaint alleges that he was "discriminated against for having tattoos," Dkt. No. 5 at 6.

ORDER REGARDING CROSS MOTIONS FOR SUMMARY JUDGMENT; DENYING MOTIONS TO STRIKE
AND FOR SANCTIONS - 24

1       Nor has he stated a claim that Defendants interfered with the free expression of his religion

2  by burdening his "sincere religious practice pursuant to a policy that is not neutral or generally

3  applicable." *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 525 (2022) (quotation marks and

4  citation omitted); *cf. Anderson v. City of Hermosa Beach*, 621 F.3d 1051, 1061 (9th Cir. 2010)

5  (noting that "a tattoo is a form of pure expression entitled to full constitutional protection."); *see*

6  *also* Dkt. No. 32 at 2 (Mr. Friedmann alleging that Defendants violated "the 1st Amendment of

7  the United States Constitution which specifically protects religion and freedom of speech (self-

8  expression is protected as well, and the Defendants targeted the Petitioner because of how he

9  dressed and because he was male, and because he is Jewish, and because of his tattoos)"). His

10 conclusory allegations are insufficient to state a free exercise violation.

11      Despite Mr. Friedmann's assertions that he is not bringing a retaliation claim, the Court

12 considers that potential claim in light of his pro se status and his contention that he was targeted

13 based on his tattoos. Dkt. No. 5 at 6; Dkt. No. 49 at 7 (contending that he "both engaged in

14 protected speech and suffered an[] adverse action for doing so."). "To establish a prima facie First

15 Amendment retaliation claim, the plaintiff must prove that (1) he engaged in protected speech;

16 (2) the defendants took an adverse employment action against him; and (3) his speech was a

17 substantial or motivating factor for the adverse employment action." *Dodge v. Evergreen Sch. Dist.*

18 *#114*, 56 F.4th 767, 776 (9th Cir. 2022) (cleaned up).

19      As for the first element, the Court agrees with Defendants that Mr. Friedmann's

20 problematic comments to Jayne's students were not protected by the First Amendment because he

21 was acting as a public figure and not speaking on a matter of public concern. Dkt. No. 48 at 7–8.

22 True enough, "teachers do not shed their constitutional rights to freedom of speech or expression

23 at the schoolhouse gate." *Kennedy*, 597 U.S. at 531 (quotation marks omitted). However, Mr.

24 Friedmann has not shown that his comments to the students and use of profanity around them

touched on a matter of public concern. *Johnson v. Poway United Sch. Dist.*, 658 F.3d 954, 964 (9th Cir. 2011); *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009). And Mr. Friedmann's in-school comments were made in his role as a substitute teacher, and were thus made as a public employee. *Johnson*, 658 F.3d at 964. Mr. Friedmann has thus failed to show that his comments to and around the students were protected by the First Amendment. *Id.*

As for Mr. Friedmann's claim that he was "discriminated against for having tattoos," Dkt. No. 5 at 6, he does not point to any adverse action he allegedly suffered as a result of his tattoos. *Dodge*, 56 F.4th at 778 ("The second element of a prima facie First Amendment retaliation claim is an adverse employment action."). The "key question" in this inquiry "is whether the retaliatory activity would chill or silence a person of ordinary firmness from continuing to speak out." *Id.* at 779 (quotation marks and citations omitted). Mr. Friedmann does not allege that his temporary inability to register for substitute teacher assignments was based on his tattoos, and such a claim would be undermined by the unrebutted evidence that Brandy paused that ability based on his "alleged conduct[.]" Dkt. No. 34 at 2–3. As Defendants note, after Brandy and Ms. Pearson met with Mr. Friedmann, discussed the complaints they had received, and viewed the tattoos, Mr. Friedmann was reinstated on the substitute list. Dkt. No. 34 at 3; Dkt. No. 50 at 2; *see also* Dkt. No. 49 at 4 (Mr. Friedmann noting that he "was permitted to return to the classroom without any adverse action when it was confirmed that the tattoos did not contain [white supremacist] imagery"). He suffered no adverse action from having the tattoos or from their content. Accordingly, the Court dismisses Mr. Friedmann's First Amendment viewpoint discrimination and free exercise claims for failure to state a claim, grants Defendants' motion for summary judgment on his First Amendment retaliation claim, and denies Mr. Friedmann's motion for summary judgment on these claims.

1

2.  Underline Fourth Amendment Claim

2

Defendants' supplemental motion for summary judgment argues that Mr. Friedmann has

3

"failed to plead or present evidence of sufficient facts to establish a Fourth Amendment violation."

4

Dkt. No. 48 at 1–2.[12] Defendants contend that even if school employees required Mr. Friedmann

5

to roll up his sleeve to display his tattoos as he alleges, Dkt. No. 5 at 6, their actions did not amount

6

to a Fourth Amendment search, Dkt. No. 48 at 12–13. In response, Mr. Friedmann fails to make

7

any arguments regarding his Fourth Amendment claim and affirmatively abandons it: "The

8

Petitioner is less concerned about litigating the violations of his 4th Amendment Rights, as the

9

issues of this matter relate more distinctly and definitively to the discriminatory behavior and

10

comments made by the Defendant's which violated the Petitioner's 1st Amendment Rights and

11

amounted to Defamation, Libel and Slander." Dkt. No. 49 at 2–3.

12

Mr. Friedmann cannot defeat Defendants' motion by resting on the allegations in his

13

complaint, or by relying on unsupported conjecture or conclusory assertions. *Anderson*, 477 U.S.

14

at 248–49; *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). As Defendants

15

note, Mr. Friedmann's response did not address the merits of this claim, and he has thus "failed to

16

meet his burden that genuine issues of material fact exist as to this issue." Dkt. No. 50 at 2. Mr.

17

Friedmann has also waived his arguments on this issue. *See* Fed. R. Civ. P. 56(e)(2); *Samica*

18

*Enters. LLC v. Mail Boxes Etc., Inc.*, 460 F. App'x 664, 666 (9th Cir. 2011) ("Arguments not raised

19

in opposition to summary judgment . . . are waived."); *Loomis v. Cornish*, 836 F.3d 991, 997 (9th

20

Cir. 2016) ("[Plaintiff] did not raise these arguments before the district court in his opposition to

21

22

---

[12] As with Defendants' motions regarding Mr. Friedmann's statutory defamation claims and First Amendment free exercise claims, this motion is really one for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) because it relies purely on the sufficiency of the allegations in the complaint rather than the facts at issue in this case. "Analysis under Rule 12(c) is substantially identical to analysis under a Rule 12(b)(6) motion to dismiss. *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (cleaned up). Specifically, under Rule 12(c), "a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy." *Id.* (internal quotation marks and citation omitted).

23

24

ORDER REGARDING CROSS MOTIONS FOR SUMMARY JUDGMENT; DENYING MOTIONS TO STRIKE AND FOR SANCTIONS - 27

1  summary judgment, so they were waived."); *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 405

2  (6th Cir. 1992) ("[The nonmoving party's] burden to respond is really an opportunity to assist the

3  court in understanding the facts. But if the non-moving party fails to discharge that burden—for

4  example, by remaining silent—its opportunity is waived and its case wagered.").

5      Even setting aside the waiver issue, Mr. Friedmann has not stated a Fourth Amendment

6  claim against any of the Defendants. To state a claim for relief under Section 1983, Mr. Friedmann

7  must show that (1) he suffered a violation of a right protected by the Constitution or created by

8  federal statute, and (2) the violation was proximately caused by a person acting under color of state

9  law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). In addition, to establish a Section

10 1983 claim against the individual Defendants, Mr. Friedmann must allege facts showing how each

11 individually named Defendant caused, or personally participated in causing, the harm alleged in

12 the complaint. *See Arnold v. Int'l Bus. Machines Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981); *see*

13 *also Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) (a plaintiff must show "personal

14 participation in the alleged rights deprivation"). Mr. Friedmann's complaint states that he was

15 "forced to strip" to display his tattoos, but he does not allege who did the forcing. Dkt. No. 5 at 6;

16 *see also* Dkt. No. 32 at 2–3 (repeating the forcing allegation, again without naming a perpetrator).

17 Jayne did not attend the meeting where he displayed his tattoos, and Mr. Friedmann does not

18 specifically allege which of the other two attendees—Brandy and non-Defendant Ms. Pearson—

19 allegedly required him to show his tattoos. Dkt. No. 35 at 2–3. He has thus failed to show that the

20 individual Defendants personally participated in any alleged deprivation of rights. *See, e.g.*, *Hicks*

21 *v. Johnson*, No. 22-cv-00421-RSM-BAT, 2023 WL 1869198, at *5 (W.D. Wash. Jan. 25, 2023)

22 ("Plaintiff's conclusory assertions that all the defendants" violated his Fourth Amendment rights

23 were "insufficient to establish a genuine issue of fact as to personal participation"), *report and*

24 *recommendation adopted*, 2023 WL 1864888 (W.D. Wash. Feb. 9, 2023). Nor has he alleged that

1   a Franklin Pierce Public Schools policy, custom, or practice was the "moving force of the

2   constitutional violation" he suffered. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658,

3   694 (1978); *see also Oyenik v. Corizon Health Inc.*, 696 F. App'x 792, 794 (9th Cir. 2017). Mr.

4   Friedmann has thus also failed to state a Fourth Amendment claim against any of the Defendants.

5   Accordingly, the Court dismisses this claim and denies Mr. Friedmann's motion for summary

6   judgment on it.

7   **G.     Mr. Friedmann's Motion for Sanctions**

8       Mr. Friedmann has also filed a motion for sanctions against Defendants. Dkt. No. 40.[13] He

9   contends that Defendants' filings in this case falsely accuse him of failing to follow lesson plans

10  and playing his guitar for students, and those statements are further instances of "defamation, to

11  include libel and slander" as well as perjury. Dkt. No. 40 at 1–2; *see also* Dkt. No. 44 at 1. Mr.

12  Friedmann fails to identify where in the record the allegedly defamatory statements are found, but

13  the Court has located them in Jayne and Ms. Pearson's declarations. Dkt. No. 35 at 3 (Ms. Pearson

14  stating that a principal from another school informed her in April 2022 that during a long-term

15  assignment at that school, Mr. Friedmann "did not follow the lesson plans that the regular teacher

16  had left," and "brought his guitar to class and played for the students, instead of doing the provided

17  lessons"); Dkt. No. 36 at 2 (Jayne stating that when she returned to class, the worksheets and

18  lessons she had left for Mr. Friedmann "had not been used"). These declarations are sworn under

19  penalty of perjury. Dkt. No. 35 at 1; Dkt. No. 36 at 1.

20      Mr. Friedmann has not identified any legal basis for imposing sanctions on Defendants. He

21  is not entitled to sanctions under Federal Rule of Civil Procedure 11 because he has not complied

22

23  _____

    [13] While the motion for sanctions was pending, Mr. Friedmann filed a second motion for sanctions that reiterated the

24  arguments in his first motion. Dkt. No. 44. The Court therefore struck the second motion for sanctions as duplicative
    and considered it as Mr. Friedmann's reply in support of his first motion for sanctions. Dkt. No. 45.

    ORDER REGARDING CROSS MOTIONS FOR SUMMARY JUDGMENT; DENYING MOTIONS TO STRIKE
    AND FOR SANCTIONS - 29

with that rule's safe harbor provision. Specifically, Mr. Friedmann did not serve the motion on Defendants 21 days before serving it as required by that rule. Fed. R. Civ. P. 11(c)(2); Dkt. No. 42 at 1. Sanctions are thus unavailable under Rule 11. *Islamic Shura Council of S. California v. F.B.I.*, 757 F.3d 870, 872 (9th Cir. 2014) (per curiam) (explaining that "[a] motion for sanctions may not be filed . . . unless there is strict compliance with Rule 11's safe harbor provision").

The Court's inherent authority provides no basis for sanctions here either because there is no evidence of bad faith by Defendants. *See, e.g.*, *Fink v. Gomez*, 239 F.3d 989, 993 (9th Cir. 2001) (noting that "bad faith is required for sanctions under the court's inherent power"); *E. & J. Gallo Winery v. Gibson, Dunn & Crutcher LLP*, 432 F. App'x 657, 659 (9th Cir. 2011) ("A court may levy a sanction on the basis of its own inherent power when a party has acted in bad faith, vexatiously, wantonly or, for oppressive reasons." (citation and quotation marks omitted)). Accordingly, the Court denies Mr. Friedmann's motion for sanctions.

### III.   CONCLUSION

For the foregoing reasons, the Court DISMISSES Mr. Friedmann's statutory defamation, Fourth Amendment, and First Amendment viewpoint discrimination and free exercise claims, GRANTS Defendants' motions for summary judgment on Mr. Friedmann's remaining claims, Dkt. No. 33, 48, and DENIES Mr. Friedmann's motions to strike, for sanctions, and for summary judgment, Dkt. Nos. 32, 38, 40, 49.

Dated this 30th day of September, 2024.

Lauren King
United States District Judge